**IT IS ORDERED as set forth below:**

**Date: September 5, 2019**



_____
**Lisa Ritchey Craig
U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| RAJESH C. PATEL, | ) | CASE NO. 16-65074-LRC |
| | ) | |
| Debtor | ) | |

## ORDER

Before the Court is the Motion to Convert Abandonment Dispute to Adversary Proceeding and for Summary Judgment (the "Motion") (Doc. 218), filed by State Bank of Texas ("SBOT"), and SBOT's Objection to Proposed Abandonment and Motion for Order Directing Trustee to Abandon Property to Creditor (the "Objection") (Doc. 198). Neil C. Gordon (the "Trustee"), as trustee of the Chapter 7 bankruptcy estate of Rajesh C. Patel

("Debtor) opposes the Motion and the Objection, and RL BB-GA RMH, LLC opposes the Motion.

## I. BACKGROUND

### A. Pre-Petition Litigation and Debtor's Bankruptcy

On January 16, 2002, SBOT's predecessor in interest, Integrity Bank, lent $10,500,000 to Diplomat Construction, Inc. ("Diplomat") (the "2002 Agreement"). (Doc. 218-1). In return, Diplomat executed a promissory note (the "Note") and granted Integrity Bank a security interest in certain real and personal property (the "Security Interest"). (Doc. 218-1). Debtor and Mukesh C. Patel, Diplomat's principals, were guarantors of the Note (the "Guaranty"). (Doc. 218-1). On December 22, 2008, SBOT purchased the Security Deed and Note. (Doc. 218-1).

Diplomat defaulted on the Note in 2009. (Rajan Patel Declaration, Doc. 218-1, at 3). After foreclosing on some of Diplomat's property, SBOT sued Debtor and Mukesh Patel for breach of contract in the United States District Court for the Northern District of Georgia (the "Federal Action") and obtained and recorded a judgment on the Note and an award of reasonable attorney's fees in the amount of $6,996,103.01. (*State Bank of Texas v. Patel,* Case No. 1:09-CV-014940-WBH, 2011 WL 13176431, *7 (N.D. Ga. Feb. 9, 2011); Writ of Fieri Facias, Doc. 218-1, at 164).

SBOT subsequently discovered that Debtor was allegedly transferring his assets to friends and family in an attempt conceal the assets from creditors, which prompted SBOT to file supplemental pleadings on August 16, 2016, in the Federal Action (the

2

"Supplemental Pleadings"). (*Patel*, Case No. 1:09-CV-014940-WBH, Doc. 207). Through the Supplemental Pleadings, SBOT sought to (1) avoid Debtor's transfers under Georgia's Uniform Fraudulent Transfers Act, O.C.G.A. § 18-2-70 *et seq.* (the "UFTA Claim"), and (2) recover damages under Georgia's Racketeering and Corrupt Influences Act, O.C.G.A. § 16-14-1 *et seq*. (the "RICO Claim"). (*Id.* at 18-24). However, on August 30, 2016, before the district court could rule on the Supplemental Pleadings, Debtor filed bankruptcy. (Doc. 1).

On March 21, 2017, SBOT informed the Trustee of its claims and asked the Trustee to, among other things, "put the Debtor's fraudulent transfer and related tort claims up for sale." (Sbaiti Letter # 1, Doc. 218-2, at 5). However, the Trustee never responded to the request.

**B. The Carnegie Adversary Proceeding**

Meanwhile, RL BB-GA RMH, LLC, initiated an adversary proceeding on November 8, 2016, to recover a tax reimbursement payment (the "Tax Reimbursement") from, among others, Debtor and Carnegie Hotel Manager, LLC ("CHM"), a company wholly owned by Debtor (the "Carnegie Adversary Proceeding"). (Adversary Proceeding No. 17-05307, Doc. 1). The Tax Reimbursement arose from an agreement between CHM and Summit Hotel TRS 099, LLC ("Summit"), whereby Summit would pay CHM for "certain historic tax credits in connection with a building located at 141 Carnegie Way, NW, Atlanta, Georgia." (Adversary Proceeding No. 17-05307, Doc. 3, at 2). As the action was an attempt to recover property on behalf of Debtor's Chapter 7 estate (the "Estate"),

3

the Trustee was substituted as plaintiff on April 3, 2017.  (Adversary Proceeding No. 17-05307, Doc. 39).

In April 2018, the parties settled the Carnegie Adversary Proceeding (the "Settlement Agreement.").  (Doc. 156, at 17; Doc. 157, at 14).  The Court subsequently granted the parties' Joint Motion to Approve Settlement and Compromise of Claims on May 18, 2018 (the "Settlement Order").  (Docs. 174, 175).  Under the terms of the Settlement Order, Summit agreed to transfer $900,000 of the Tax Reimbursement payment to the Trustee (the "Settlement Funds"), and the Trustee agreed to pay $250,000 to Rogers Law Offices as a contingency fee and to abandon any claim the Estate had against Debtor, Shama Patel, Jay Patel, CHM, and Summit (the "RC Parties").[1]  (Doc. 174, at 4, 6).

## C.  SBOT's Objection to the Trustee's Notice of Abandonment

On October 8, 2018, the Trustee filed a Notice of Proposed Abandonment or Disposition of Property ("Notice of Abandonment"), declaring that he intended to abandon "ANY AND ALL PRESENTLY SCHEDULED REAL AND PERSONAL PROPERTY OF THE DEBTOR THAT REMAINS UNLIQUIDATED" (the "Abandoned Property"). (Doc. 195).  SBOT objected to the Notice of Abandonment, alleging that SBOT "holds a 'first priority' security interest and mortgage on Debtor's property recorded on January 17, 2002."  (Doc. 198, at 1).  In the Objection, SBOT asked the Court to direct the Trustee to surrender the Abandoned Property to SBOT.  (*Id.* at 6).

---

[1] Though not expressly incorporated into the Settlement Order, the Settlement Agreement also provides that the Trustee "RELEASES, ACQUITS, and FOREVER DISCHARGES the RC Parties, jointly and severally, from any and all claims . . . possessed as of the date of this Agreement."  (Doc. 156, at 25).

4

After SBOT filed the Objection, it was contacted by the Trustee's counsel, who explained that "even if Trustee were to administer assets subject to numerous competing judgment liens, Trustee would have to file an adversary proceeding to determine the extent, priority and validity of liens to determine for certain (by way of court order) which judgment creditor has priority." (Matthews Email, Doc. 218-2, at 22). The Trustee's counsel also informed SBOT of the Trustee's position that he had no authority to surrender the Abandoned Property directly to SBOT. (*Id.*).

On February 13, 2019, SBOT filed the Motion. In the Motion, SBOT asks the Court to (1) convert the Objection into an adversary proceeding; (2) find that SBOT has a right to receive the Abandoned Property; and (3) "enter summary judgment recognizing [that SBOT's] status as the senior-most secured creditor entitles it to the remaining money in the estate."[2] (Doc. 218, at 2). For the following reasons, the Motion is denied.

## II. DISCUSSION

### A. SBOT's is Not Entitled to Receive Abandoned Property

SBOT asks the Court to order the Trustee to turn over the Abandoned Property to SBOT. There is a split of authority as to whether a bankruptcy court can order a Chapter 7 trustee to abandon property to a non-debtor. Some courts have held that, because § 554 of the Bankruptcy Code only pertains to "property of the estate," which § 541(a)(1) defines as all legal or equitable interests of the debtor, "[a]bandonment does not and cannot convey

---

[2] According to the Trustee's Interim Report, the Estate has the $900,000, which the Trustee recovered through the Settlement Order. (Doc. 222).

5

to any third party any of the estate's (or the debtor's) legal or equitable interests in property." *In re Renaissance Stone Works, L.L.C.*, 373 B.R. 817, 820 (Bankr. E.D. Mich. 2007). Other courts have held that § 554(b) does not specify to whom property of the estate may be abandoned, and therefore bankruptcy courts have discretion to order the trustee to abandon property to a third party so long as that party has a superior possessory interest. *See Miller v. Generale Bank Nederland, N.V. (In re Interpictures Inc.)*, 217 F.3d 74, 76 (2d Cir. 2000) (collecting cases); *Dewsnup v. Timm (In re Dewsnup),* 908 F.2d 588, 590 (10th Cir. 1990); *In re Popp*, 166 B.R. 697, 700 (Bankr. D. Neb. 1993); *see also In re Jandous Elec. Const. Corp.*, 96 B.R. 462, 466 (Bankr. S.D.N.Y. 1989) (citing legislative history in support of the conclusion that "[a]bandonment may be to any party with a possessory interest in the property abandoned" (citing H.R.Rep. No. 95–595, 95th Cong., 1st Sess. at 377 (1977); S.Rep. No. 95–989, 95th Cong. 2d Sess. at 92 (1978), U.S.Code Cong. & Admin.News 1978, at 5878, 6333). Those courts reason that the abandoned property should be treated "as if no bankruptcy petition was filed" so "[f]ollowing abandonment, whoever had the possessory right to the property at the filing of bankruptcy again reacquires that right." *In re Dewsnup*, 908 F.2d at 590 (internal quotations omitted).

Assuming, without deciding, that the Court has authority to order the Trustee to abandon property to a non-debtor, SBOT has not shown that it has a possessory interest in the Abandoned Property. A possessory interest is the "'*present* right to control property, including the right to exclude others, by a person who is not necessarily the owner.'" *Davis v. Matt Gay Chevrolet, Inc. (In re Davis)*, 374 B.R. 362, 365 (Bankr. S.D. Ga. 2006) (emphasis added) (quoting *Possessory Interest*, BLACK'S LAW DICTIONARY 1203 (8th ed.

6

2004)). For example, in *In re Popp*, the court found that a creditor who initiated a prepetition action to recover farm equipment and machinery, which was stayed by the debtor's bankruptcy, was not entitled to recover that property from the trustee. *In re Popp*, 166 B.R. at 700. The court explained that the creditor had not "gone far enough into its replevin action" and "did not have possession of the assets at the filing date and, therefore, the Trustee may not abandon to the [creditor] and must abandon to the Debtor." *Id.* at 700-01.

In this case, like the creditor in *In re Popp*, SBOT did not acquire possession of the Abandoned Property before Debtor filed bankruptcy. Although SBOT has a judicial lien, giving it an interest in all of Debtor's property on the date the judgment was entered, *see* O.C.G.A. § 9-12-80, such an interest "does not constitute a right of property in the thing itself, but only a right to levy on it and sell it." *Sanders v. McAffee*, 42 Ga. 250, 255 (Ga. 1871). Because SBOT did not possess the Abandoned Property before Debtor filed bankruptcy, SBOT does not have a possessory interest in the Abandoned Property and may not receive that property from the Trustee.

SBOT's reliance on *In re A.J. Lane & Co.*, 133 B.R. 264 (Bankr. D. Mass. 1991), is unpersuasive. In that case, the parties disagreed about whether the trustee could abandon the debtor's interest in an apartment complex to the apartment's mortgagee, First Mutual Bank of Boston ("First Mutual"). First Mutual previously obtained relief from the automatic stay and sold the apartment complex at foreclosure. *Id.* at 266-67. The court found that, because First Mutual obtained relief from the automatic stay and was free to foreclose on its mortgage, First Mutual had a superior possessory interest under

7

Massachusetts law. *Id.* at 269 (citing MASS. GEN. LAWS CH. 183, § 26 and MASS. GEN. LAWS CH. 244, § 1).[3] The reasoning in *In re A.J. Lane & Co.* does not apply to this case. As explained above, Georgia law does not give a judgment creditor the right to take immediate possession of the debtor's property; only the right to levy on and sell that property.

## B.  SBOT is Not Entitled to the Settlement Funds

Turning to SBOT's interest in the Settlement Funds, SBOT first maintains that it is entitled to the Settlement Funds because the Trustee acquired that money by releasing claims that SBOT raised in the Supplemental Pleadings. Alternatively, SBOT insists that its Judgment Lien against Debtor attached to the Settlement Funds.

### 1. The Settlement Funds are Not Traceable to the Supplemental Pleadings

As explained above, the Settlement Agreement released all claims the Trustee had against the RC Parties. SBOT asserts that those claims included the UFTA and RICO Claims that it raised in the Supplemental Pleadings. SBOT asserts that, because the Settlement Funds were obtained by releasing SBOT's claims, SBOT is entitled to the Settlement Funds.

First, with respect to the RICO Claims, SBOT misconstrues the scope of the Settlement Agreement. The case law is well-established that, except for avoidance actions, a bankruptcy trustee lacks authority to assert claims on behalf of specific creditors unless

---

[3] The Massachusetts statutes that the court relied on provide that a mortgagor retains a possessory interest in mortgaged property until she defaults, at which point the mortgagee is entitled to take immediate possession. *See* MASS. GEN. LAWS CH. 183, § 26 and MASS. GEN. LAWS CH. 244, § 1.

8

"such a claim would be common to all creditors and the law of the applicable jurisdiction allows that cause of action," such as an alter ego claim that would essentially bring assets into the bankruptcy estate for the benefit of all creditors. *In re Harman*, 529 B.R. 352, 355 (Bankr. N.D. Ga. 2015) (Murphy, J.) (citing *In re Icarus Holding, LLC.*, 391 F.3d 1315, 1321 (11th Cir. 2004)). Therefore, the Trustee could only assert and release SBOT's RICO claims if such claims were common to all creditors and would benefit all creditors. If so, the Trustee released the claims and SBOT has no greater claim to the Settlement Funds than any other creditor. If the Trustee lacked authority to pursue and release SBOT's RICO claims, SBOT retains such claims and has no interest in the Settlement Funds.

Turning to SBOT's UFTA Claim, the Trustee's release of any avoidance claims in the Settlement Agreement does not give SBOT an interest in the Settlement Funds. All avoidance claims, including those under state law that belonged to Debtor's creditors, became property of Debtor's bankruptcy estate and were properly released as part of a settlement by the Trustee. *See, e.g., Romagosa v. Thomas (In re Van Diepen)*, 236 F. App'x 498, 502 (11th Cir. 2007); *First Bank of Dalton v. Manton Family P'ship, LLLP (In re Manton)*, 585 B.R. 630, 635 (Bankr. N.D. Ga. 2018) (Diehl, J.) (noting that "[t]wo well-established principles of bankruptcy law, . . .are that fraudulent transfer actions become property of the estate, and that only the trustee has the power to prosecute a fraudulent transfer action."); *Ragsdale v. South Fulton Machine Works, Inc. (In re Whitacre Sunbelt, Inc.)*, 211 B.R. 411, 417 (Bankr. N.D. Ga. 1997) ("The power to avoid . . . preferential or fraudulent transfers made by a debtor belongs to the trustee, not to creditors or to third

9

parties."); *In re CD Jones & Co.*, 482 B.R. 449, 452 (Bankr. N.D. Fla. 2012) (when a debtor files bankruptcy, his creditors are stripped of their fraudulent transfer claims).

### 2. The Judgment Lien Does Not Attach to the Settlement Funds

SBOT next argues that its Judgment Lien attaches to the Settlement Funds. Under Georgia law, a judgment lien attaches to "all the property of the defendant in judgment, both real and personal, from the date of such judgments." O.C.G.A. § 9-12-80. However, by operation of O.C.G.A. § 9-13-57, a judgment lien does not attach to a chose in action. "A chose in action is personalty to which the owner has a right of possession in the future or a right of immediate possession which is being wrongfully withheld." O.C.G.A. § 44-12-20. "A chose in action includes the proceeds from a contract performance, and is also the right of a creditor to be paid on a debt owed by a debtor." *Prodigy Ctrs./Atlanta No. 1 L.P. v. T–C Associates et al*, 501 S.E.2d 209, 212 (Ga. 1998); *see also Levine v. Weyer (In re DotMD, LLC)*, 303 B.R. 519, 525 (Bankr. N.D. Ga. 2003) (finding that the assets of the estate, derived from settling debtor's contractual dispute with a third party, amounted to a chose in action to which the creditor's lien did not attach). In *Prodigy Ctrs./Atlanta No. 1 L.P.*, the Georgia Supreme Court found that a partnership interest is "a contractual or statutory right to a portion of the financial items produced by the limited partnership" and therefore amounted to a chose in action. *Prodigy Ctrs./Atlanta No. 1 L.P.*, 501 S.E.2d at 212-13.

The court in *Prodigy Ctrs./Atlanta No. 1 L.P.* went on to explain that a judgment lien does not attach to a chose in action because

> [a judgment lien] attaches only to such property of the debtor as is capable of seizure and sale under execution based upon such judgment. . . . [C]hoses in action are not subject to seizure and sale under executions based upon ordinary judgments. In order to reach the property of the debtor in such choses in action, some other additional proceeding is necessary to fix the lien of such judgments. [It] must be reached either by process of garnishment or by some collateral proceeding instituted for the purpose of impounding it so that it can be applied in satisfaction of the judgment.

*Prodigy Ctrs./Atlanta No. 1 L.P.*, 501 S.E.2d at 211 n.3.  Requiring garnishment or "some collateral proceeding" reflects "sound policy, because it guarantees that the third party, who holds the property and may also have rights in the subject property, will receive notice and the opportunity to be heard, and that the property is fairly distributed."  *In re DotMD, LLC*, 303 B.R. at 526 n.7.

Here, the Settlement Funds were recovered by pursuing Debtor's interest in CHM, which was entitled to a portion of the Tax Reimbursement.  Like the partnership interest in *Prodigy*, Debtor had a right to CHM's income under O.C.G.A. § 14-11-101(13).  Debtor's right to CHM's income is a right of possession in the future and therefore amounts to a chose in action.  *See McWilliams v. Hemingway*, 57 S.E.2d 623, 625 (Ga. Ct. App. 1950) ("[P]roperty or money to which the debtor has only the right of possession rather than the actual possession is a chose in action."); *see also In re Wisner*, 2018 WL 4808380, at *5 (Bankr. N.D. Ga. Oct. 2, 2018) (Ellis-Monro, J.) ("Examples [of a chose in action] include proceeds from a contract performance, the right of a creditor to be paid on a debt, partnership interests, . . . and corporate stock . . . .").

Accordingly, for the Judgment Lien to attach to the Settlement Funds, SBOT was required to initiate a garnishment or collateral proceeding to impound those funds.[4] As SBOT failed to initiate such an action, the Judgment Lien did not attach.

SBOT relies on *Coleman v. J & B Enters., Inc. (In re Veterans Choice Mortgage)*, 291 B.R. 894 (Bankr. S.D. Ga. 2003) ("*VCM*") and insists that, despite its failure to initiate a collateral proceeding, the Settlement Funds are after-acquired property to which the Judgment Lien attaches. In *VCM*, J & B Enterprises, Inc. ("J & B") obtained and perfected a judgment against the debtor before it filed Chapter 7 bankruptcy. The trustee objected to the secured status of J & B's claim on the ground that the claim was not secured by any property. *VCM*, 291 B.R. at 896. J & B responded that the trustee's objection was premature, as J & B would have a superior lien on any property that the trustee recovered in a pending adversary proceeding in which the trustee sought to avoid preferential and fraudulent transfers. The court found that the issue of whether J & B's judgment lien will attach to property recovered by the trustee was controlled by whether the creditor had a state law right to seize and recover that property. If so, the "lien will attach to after-acquired property recovered by the bankruptcy trustee." *Id.* at 897. The court concluded that because J & B had a pre-petition fraudulent transfer action under Georgia law, J & B's lien would attach to any property that the Trustee recovered pursuant to § 548.

---

[4] The fact that the Settlement Funds are the proceeds of a chose in action as opposed to Debtor's unliquidated claims does not relieve SBOT from having to levy on the Settlement Funds. *See Weyer v. Levine (In re DotMD, LLC)*, 145 F. App'x 326, 327 (11th Cir. 2005).

*VCM* has been criticized for its broad proposition that attachment is determined by whether the creditor had a state law right to seize and recover the property. *See In re Wisner*, 2018 WL 4808380, at *9. In *In re Wisner*, the court explained that "[i]n Georgia, the ability of a judgment lien creditor to perfect its lien in real estate, personalty, or a chose in action differs depending on the type of property and on what other type of lien is under consideration." *Id.* Accordingly, to determine whether a judgment lien attaches to recovered property, the court must consider the type of property and relevant facts surrounding that property. Such facts may include "recordation or lack thereof, where the recording occurred, filing of a garnishment or other collateral action, and service of the summons for such actions." *Id.*

The Court agrees with the reasoning in *In re Wisner*. *VCM*'s suggestion that judgment liens attach to all property that the creditor has a state law right to seize and, therefore, attaches to property recovered by the trustee in a fraudulent transfer action ignores O.C.G.A. § 9-13-57, which prevents judgment liens from automatically attaching to choses in action.

## C.  Conversion to an Adversary Proceeding is Unnecessary

As for its request to convert the Objection to an adversary proceeding, SBOT does not explain why an adversary proceeding is necessary other than because the Trustee told SBOT "if Trustee were to administer assets subject to numerous competing judgment liens, Trustee would have to file an adversary proceeding to determine the extent, priority and validity of liens to determine for certain (by way of court order) which judgment creditor has priority." (Doc. 218, at 8). While an adversary proceeding may be necessary for the

13

Trustee to administer property subject to competing claims, the Trustee has chosen to abandon, rather than administer property, and an objection to abandonment is properly treated as a contested matter under Federal Rule of Bankruptcy Procedure 9014. *See* COLLIER ON BANKRUPTCY ¶ 554.02[6]. Thus, as an adversary proceeding is not necessary to resolve the Objection, SBOT's request is denied.

### III. CONCLUSION

As it has not shown that it had a possessory interest, SBOT is not entitled to an order directing the Trustee to turn over the Abandoned Property. Furthermore, neither the claims raised in the Supplemental Pleadings nor the Judgment Lien give SBOT an interest in the Settlement Funds. Finally, the Objection has been resolved without the need to convert this matter to an adversary proceeding. Therefore,

**IT IS HEREBY ORDERED** that SBOT's "Motion to Convert Abandonment Dispute to Adversary Proceeding and for Summary Judgment" is **DENIED,** and the Objection is **OVERRULED**.

[END OF DOCUMENT]

**Distribution List**

Neil C. Gordon
Arnall Golden Gregory LLP
171 17th Street, N.W.
Suite 2100
Atlanta, GA 30363-1031

Frank B. Wilensky
Macey, Wilensky & Hennings, LLP
Suite 435

5500 Interstate Parkway North
Atlanta, GA 30328

Michael D. Robl
Robl Law Group LLC
Suite 250
3754 LaVista Road
Tucker, GA 30084

Bruce Z. Walker
Cohen Pollock Merlin Turner, PC
Suite 1600
3350 Riverwood Parkway
Atlanta, GA 30339-6401

Bryan M. Knight
Knight Johnson. LLC
1360 Peachtree Street, NE
Suite 1201
Atlanta, GA 30309

Carolyn Cain Burch
Chalmers Burch & Adams LLC
75 Fourteenth Street, NE
Suite 2725
Atlanta, GA 30309

Tara L. Elgie
Hunton Andrews Kurth LLP
1445 Ross Avenue, Suite 3700
Dallas, TX 75202

Robert J Giglio
Ryan Law Partners LLP
33 Cranston Avenue
Newport, RI 02840

John W. Mills, III
Barnes & Thornburg LLP
Suite 1700
3475 Piedmont Road, NE
Atlanta, GA 30305

Deborah M. Perry
Munsch Hardt Kopf & Harr, PC
500 N. Akard Street
Suite 3800
Dallas, TX 75201-6659

Beth Rogers
Rogers Law Offices
100 Peachtree Street NW
Suite 1950
Atlanta, Ga 30303

Stonebridge Accounting & Forensics LLC
Spence A. Shumway, CPA
P.O. Box 1290
Grayson, GA 30017